UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBIN MILLER KROENING,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DEL MONTE FRESH PRODUCE<br>N.A., INC. a foreign corporation,<br>and THE MIDWEST BEST PRODUCE<br>COMPANY, a foreign corporation,<br><br>　　　　　Defendants.<br>and<br><br>THE MIDWEST'S BEST PRODUCE<br>COMPANY, a foreign corporation,<br><br>　　　　　Defendant and<br>　　　　　Third-Party Plaintiff,<br>V.<br><br>BEACHSIDE PRODUCE, LLC,<br>FORTUNE GROWERS, LLC,<br>CH ROBINSON CO., Inc.<br>CALIFORNIA ARTICHOKE AND<br>VEGETABLE GROWERS<br>CORPORATION d/b/a OCEAN MIST<br>FARMS, INC., AND<br>VEGGIFRUIT, INC.,<br><br>　　　　　Third-Party Defendants. | Court File No.: 18-cv-1636 (JNE/SER) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

1

This is a dispute over the appropriate scope of a Rule 30(b)(6) deposition. Plaintiff seeks discovery into the underlying cause of the 2018 *Cyclospora* outbreak linked by public health authorities to vegetable trays produced by Defendant Del Monte Fresh Produce N.A., Inc. ("Del Monte").  The Court should deny Del Monte's Motion for Protective Order because discovery rules entitle Plaintiff to conduct discovery into the relevant facts giving rise to her claims for both strict liability and negligence. She, along with the hundreds of others who were sickened, deserve answers from a prepared designee regarding Del Monte's representations to consumers; the contrast of its public recall of the vegetable trays but absolute denial of legal liability; its guarantees that it could bring fresh produce to convenience stores safely; and its claims against Midwest Best, the implicated upstream supplier.

## **BACKGROUND**

This lawsuit was originally filed on June 12, 2018, and has been plagued with discovery delays from the outset. Del Monte responded with a Rule 12(b)(6) motion. Plaintiffs then filed an amended complaint on August 10, 2018.  Del Monte eventually answered the amended complaint, denying all of Plaintiff's claims.

In its October 11, 2018, Rule 26(f) initial disclosures, Del Monte failed to identify any upstream suppliers of the vegetables implicated in the outbreak, despite *actual knowledge* that Defendant The Midwest's Best Produce Company ("Midwest Best") supplied the allegedly contaminated product. (Lien Rinholen Decl. Ex. A, Del Monte Initial Disclosures). Del Monte's knowledge of Midwest Best as a potential defendant dates to at

2

least June 22, 2018—10 days after this lawsuit was filed. (Lien Rinholen Decl. Ex. B, DM 005878-5881). Plaintiff served extensive written discovery on Del Monte on November 21, 2018. (Lien Rinholen Decl. ¶ 5). Del Monte did not provide its Answers to Interrogatories until February 18, 2019. (Lien Rinholen Decl. ¶ 6). These responses – served 252 days after filing the initial complaint, 131 days after initial disclosures, and 90 days after service of written discovery – revealed for the first time that Midwest Best was the supplier of the allegedly contaminated produce.

Plaintiff immediately recognized that Midwest Best was a necessary party and filed a Motion to Amend her complaint on March 22, 2019. (Dkt. No. 30). By March 29, 2019, Del Monte stipulated to adding Midwest Best as an additional defendant, and the Second Amended Complaint was filed on April 4, 2019. (Dkt. No. 37). Midwest Best soon answered and brought its third-party claims against additional upstream suppliers: Fortune Growers, Beachside Produce, VeggiFruit, Ocean Mist Farms, and C.H. Robinson. There are now numerous cross-claims and counter-claims among the various supplier-defendants.

Plaintiff has asserted strict liability and negligence claims against both Del Monte and Midwest Best. In an array of investor and public communications, Del Monte has stated its intention to rapidly expand sales in the convenience market, including gas stations. Plaintiff alleges that this expansion was made without taking the steps necessary to ensure its supply chain, and, consequently, the products it delivered were a safe, ready-to-eat product. As a result, Del Monte sickened *hundreds* of individuals, including Plaintiff Robin Kroening, as part of a well-documented *Cyclospora* outbreak in 2018.

To date, Plaintiff has limited information about how Del Monte's vegetable products caused such a large outbreak and only recently discovered the identities of the critical suppliers. The instant discovery motion is the latest attempt to delay Plaintiff's efforts to seek the truth about what happened and shield Del Monte from completely reasonable discovery.

As indicated by Defendant's memorandum, most of the disputes regarding the 30(b)(6) notice were addressed through the meet and confer process. Del Monte, however, has declined to produce a witness to discuss four subjects highly relevant to the claims and cross claims of all parties. Defense counsel also declined to attempt to resolve these informally, instead electing to file this Motion. (Lien Rinholen Decl. Ex. C, Regan Email Jul. 10, 2019).

## **ARGUMENT**

Plaintiff's Amended Rule 30(b)(6) deposition notice seeks discovery into four general areas carefully tailored to specific claims. Plaintiffs seek discovery on 1) product specifications, guarantees, and representations; 2) public statements related to the outbreak; 3) Kwik Trip's role in Del Monte's convenience store market expansion; and 4) the factual basis for Del Monte's claims against Midwest Best. Because the Federal Rules of Civil Procedure favor liberal discovery and full factual disclosure, Plaintiff should be permitted to obtain binding testimony relating to each of these areas of examination.

### I. Rules 26 and 30(b)(6) allow liberal discovery.

Rule 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense. . ." F.R.C.P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* In a seminal case discussing the then-newly-adopted Federal Rules of Civil Procedure, the Supreme Court discussed the purpose of liberal discovery:

> No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

In 2015, Rule 26 was amended to include a proportionality requirement, which takes into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1). The Committee Note for the 2015 amendment points out that the relative access to information is often one-sided:

> Some cases involve what often is called "information asymmetry." One party -- often an individual plaintiff -- may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

F.R.C.P. 26, Committee Note.

Rule 30(b)(6) is one vehicle for litigants to gain access to discoverable information within the scope of 26(b)(1). The Rule permits a party to "name as the deponent a . . . corporation. . . and must describe with reasonable particularity the matters for examination." F.R.C.P. 30(b)(6). The corporation "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify," and the designee(s) "must testify about information known or reasonably available to the organization." *Id.*

"Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *Great Am. Ins. Co. of New York v. Vegas Const. Co.,* 251 F.R.D. 534, 539 (D. Nev. 2008), citing *Marker v. Union Fidelity Life Insurance*, 125 F.R.D. 121, 126 (M.D.N.C.1989). "Rule 30(b)(6) contains no requirement that [a party] first seek by other means of discovery the facts underlying the claim. . ." *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011).

Though "preparing for a Rule 30(b)(6) deposition can be burdensome," that burden "is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.), aff'd, 166 F.R.D. 367 (M.D.N.C. 1996).

II. **Specifications, Guarantees, and Representations are Relevant to Plaintiff's Product Liability and Negligence Claims.**

Del Monte claims that, because Plaintiff is not specifically asserting a separate failure to warn claim, any specifications, guarantees, warranties, or representations made

to Plaintiff, Kwik Trip, or others, are irrelevant. Defendant's characterization of Plaintiff's claims is far too narrow and focuses on whether specifications, guarantees, and representations *by themselves* give rise to Plaintiff's Complaint – an impossibly narrow framing of the issue that runs directly counter to Rule 26.

Specifications, guarantees, and representations by a product manufacturer go to key issues in every single product liability/negligence case. Specifically, this information often amounts to party admissions and relates directly to the purpose for which the product was sold, the product's intended use, the nature of the product at issue, and both the Defendant's and the Plaintiff's knowledge of the product at the time of sale and consumption. 4A Minn. Prac., Jury Instr. Guides--Civil CIVJIG 75.30, 75.35, and 75.60 (6th ed.)

### A. Del Monte sold a "ready-to-eat" product.

The labeling, guarantees, and representations that this product was "ready-to-eat" is highly relevant. Plaintiffs must prove that the product was defective when used as intended. The intended use – immediate human consumption – is contained explicitly in labeling, guarantees, and representations. In addition, Plaintiff asserts that Del Monte did not act reasonably under the circumstances. What it promised consumers (and its retailers like Kwik Trip) is highly relevant to whether it acted as would a reasonable seller of fresh, "ready-to-eat" produce. For Plaintiffs to prove what a reasonable producer would have done, Plaintiff must develop a record regarding the nature of the product at issue. For example, the industry standard for vegetables to be cooked or otherwise further processed may be completely different from vegetables to be used in trays. Further, the precise

7

specifications for the product are further evidence of whether Del Monte acted reasonably under the circumstances. If Del Monte promised unadulterated product free of human feces through specifications, but delivered – and took grossly inadequate steps to prevent – product containing human feces, it is more likely Del Monte did not act as would a reasonable producer.

### B. Packaging Containing Best-By Dates is Highly Relevant to Traceback Analysis.

Best-by dates on the package are also relevant because *Cyclospora* must sporulate prior to consumption in order to be infectious, which can take several days. Even if Plaintiff did not rely on any specific notation on the package, she recalls having consumed what she believed to be an unexpired vegetable tray. Kwik Trip employees presumably would have removed an expired vegetable tray from the cooler. This sort of data is also relevant because it allows expert epidemiologists to trace contaminated product upstream.

### C. Origin Information Relates to Traceback and Ultimate Liability.

Origin information is also relevant to traceback attempts. Traceback – the process of analyzing data from ill individuals, the products they consumed, to the ultimate source of the constituent ingredients of the product – is a critical step in any food poisoning outbreak investigation. Del Monte objects to this topic, insisting that product origin information was discoverable from "numerous documents" and will be covered "through another Topic…" (Def. Memo. 7). As an initial matter, "Rule 30(b)(6) contains no requirement that [a party] first seek by other means of discovery the facts underlying the claim. . ." *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011). Regardless, if

8

anything, the documents make the origin of the implicated produce less clear, since all recalled packaging indicated that the broccoli originated in Mexico,[1] but Midwest Best shipped lots of USA-grown broccoli on May 4 and 24, 2018. (Lien Rinholen Decl. Ex. D, FDA000242-49). Additionally, a microbiologist at the University of Wisconsin performed a test and believed she saw a *Cyclospora* oocyst in *domestic* broccoli from one of the implicated trays:

> UW did a sucrose gradient; said they used the FDA method online. 18 oz in a 4 liter flask with 2 liters of water and stirred overnight. Separated the water from the broccoli. 200xg for 30 minutes. Looked for autoflorecense in the pellet. Lots of oocyst structures were seen in the sample from the USA but nothing in the sample from MX. The water from USA broccoli was dirtier and cloudy. Oocysts are only 5 microns, so they look more like cryptosporidium rather than Cyclospora. **The analysis is not done yet, so this is still very preliminary.**

(Lien Rinholen Decl. Ex. E, FDA00647).

The guarantees, specifications, and warranties, including origin information, made by Del Monte to consumers and to Kwik Trip are critical to understanding whether Del Monte's conduct was reasonable or negligent under the circumstances and whether the product was defectively manufactured. Packaging also contained best-by and origin information that could provide greater clarity and help establish the timeline between contamination and consumption.

### III. Del Monte's Public Statements Are Appropriate Deposition Topics

Plaintiff should be permitted to ask Del Monte's designee about public statements the corporation has made regarding the outbreak. Del Monte claims the only public statement it has made was a voluntary recall notice dated June 15, 2018. (Def. Memo. 7).

---

[1] See Voluntary Recall Notice, Decl. of A. Regan, Dkt. No. 96-9, (Jul. 31, 2019).

Defendant claims that, because this notice was issued after Plaintiff's initial complaint was filed, examination on this topic "will not lead to the discovery of admissible evidence." (Def. Memo. 8). Del Monte also suggests the basis for the recall notice and its preparation are "internal privileged communications or work product information." (Def. Memo. 8). Finally, Del Monte insists that "Plaintiff has not demonstrated any need to examine a corporate witness regarding this topic." (Def. Memo. 9).

Defendants public statements are critical party admissions relating to ultimate responsibility. Public statements also help fill in the timeline of events as the outbreak was in progress. Allegations pertaining to Del Monte's public statements (or lack thereof) are found in the following Paragraphs in Plaintiff's Second Amended Complaint:

> 68.   However, Del Monte's recall of the vegetable trays was not prompt enough to fully stop the ongoing outbreak, as unsuspecting consumers who had eaten the "fresh" vegetables fell ill in droves throughout June 2018.
>
> 69.   Though Del Monte did not issue any press release to alert consumers that their trays had been contaminated with feces, local and national news outlets took notice of the rising numbers of sick people, prompting others that continued to struggle with diarrhea, nausea, fatigue, and painful stomach cramps to seek medical attention and be evaluated for cyclosporiasis.
>
> 73.   To date, Del Monte has issued no public statement and provided no public information on how its product became contaminated with feces.

Dkt. No. 37, (Apr. 4, 2019).

Del Monte's public statements are not privileged by definition because they were "public." Furthermore, facts that a corporation communicated to its attorney are not protected by the attorney-client privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) ("privilege only protects disclosure of communications; it does not protect

disclosure of the underlying facts by those who communicated with the attorney"). A party seeking a 30(b)(6) deposition "is entitled to inquire into the factual bases of the [responding party's] allegations." *U.S. v. McDonnell Douglas Corp.*, 961 F. Supp. 1288, 1290 (E.D. Mo. 1997), aff'd, 132 F.3d 1252 (8th Cir. 1998). Permitting "a blanket claim of privilege in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." *S.E.C. v. Kramer* at 1328.

Based on the documents available, it appears the recall was initiated with assistance from QA employees, not counsel. (*See* DM006373-74, Lien Rinholen Decl. Ex. F.). Del Monte necessarily had some factual information regarding contamination of its product prior to issuing the recall notice. Those facts are not privileged and are highly relevant to Plaintiff's claim that she was part of a broad outbreak.

Like privilege, the work-product doctrine also does not shield Del Monte from answering questions about its public statements. Though "counsel's own investigation into the facts of the case is substantially protected by the doctrine. . . the fact remains that a designated witness or witnesses must still be prepared to respond to the 30(b)(6) notice." *Wilson v. Lakner*, 228 F.R.D. 524, 529 (D. Md. 2005).

The timing of the recall notice is also relevant to Plaintiff's negligence claim. Manufacturers have a post-sale duty to warn in Minnesota. The post-sale duty to warn is

based on a "reasonable seller" negligence-based standard.[2] Documents suggest that Del Monte knew its product was implicated as early as June 8, 2018, but chose to remain silent rather than alert consumers:



> From: Ross Mckenney [mailto:Rmckenney@freshdelmonte.com]
> Sent: Monday, June 25, 2018 1:02 PM
> To: Hamblin, Casey <Casey.Hamblin@fda.hhs.gov>
> Cc: Hans Sauter <h_sauter@freshdelmonte.com>
> Subject: RE: Del Monte Recall
>
> Casey,
>
> Happy Monday.
>
> No formal recall notice was sent. The lots in question had been withdrawn a week earlier. However, we have been on the phone with the Kwik Trip Food Safety group practically every day since 6/8, so we let them by phone that we were in recall mode promptly after the decision was made on the 15th. Following similar courtesy norms, the other two clients were notified by the Kankakee sales team.
>
> On a related note, we are still in progress on getting final withdrawal container/ case tallies.
>
> Regards,
> Ross

(Lien Rinholen Decl. Ex. G, DM008009).

The topic of public statements also encompasses Del Monte's position and beliefs relating to its public statements. The recall notice does not "speak for itself" because it cannot answer questions under oath. Under Rule 30(b)(6), a "corporation must provide its interpretation of documents and events." *United States v. Taylor*, 166 F.R.D. 356, 361

---

[2] *Great N. Ins. Co. v. Honeywell Int'l, Inc.*, 911 N.W.2d 510, 520 (Minn. 2018) (adopting Restatement 3d Prod. Liab. s 10, which states "one engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.")

(M.D.N.C.), aff'd, 166 F.R.D. 367 (M.D.N.C. 1996), citing *Ierardi v. Lorillard, Inc.*, Civ. A. No. 90–7049, 1991 WL 158911 (E.D.Pa. Aug. 13, 1991). Del Monte publicly recalled thousands of vegetable trays that had been implicated in a *Cyclospora* outbreak. To date, Del Monte has steadfastly denied liability. There is no basis to limit discovery regarding these two incongruent positions—that Del Monte recalled these products but now claims it is not responsible for the outbreak. Accordingly, Plaintiff seeks discovery of the facts known to Del Monte that formed the basis of the voluntary recall notice and for any other public statements it made regarding this outbreak.

### IV. Del Monte Promised Food Safety In Convenience Store Products.

Del Monte seeks to limit testimony regarding its relationship with Kwik Trip such that it is viewed in isolation from Del Monte's broader operations. However, Del Monte had a stated goal of expanding into a convenience market—prompting general concerns about the safety of fresh cut food sold through an emerging market. The relevant allegations in the complaint are found at Paragraphs 54-57:

> 54. Expansion into the gas station market has been a long-term goal for Del Monte.
>
> 55. In an interview with Fox Business on February 28, 2012, Del Monte CEO Mohammed Abu-Ghazelah specifically targeted gas stations as an area of expansion: "We see more products going into the convenience stores, like petrol stations, like in Seven Eleven and the like, so that's that's a very big, you know, kind of reflection of how the market is evolving."
>
> 56. When asked if he could "keep up … food safety with the explosion of [Del Monte Fresh's] product through these areas … into … gas stations," Abu-Ghazelah responded "Definitely. This is top priority in our agenda as well, as we have the infrastructure to be able to meet these challenges. We

13

do have very strict control on quality and hygiene and we make that the [product] comes to the consumer in the utmost condition."

57.    In addition to expanding its sales in gas stations and other convenience stores, Del Monte Fresh has strategically worked to expand its grip on the production of fresh and value-added vegetable products, like vegetable trays.

Second Amended Comp., Dkt. No. 37, (Apr. 4, 2019).

These allegations are derived from a Fox Business Interview with the Del Monte Fresh CEO. (Lien Rinholen Decl. Ex. H, Fox Business Int. Feb. 28, 2012).[3] Del Monte insists the suggestion that Del Monte had a profit motive in selling, year-over-year, more fresh cut produce to Kwik Trip—perhaps without sufficient time to develop a safe infrastructure—is part of "broad, speculative, and spurious themes, theories, and allegations."

Without the benefit of deposition discovery, Plaintiff has little to inform her understanding of the change of Del Monte's convenience market and Kwik Trip sales over time—and the role an increased output may have played in food safety. Initial investigation has revealed that:

- Del Monte sought to increase profits by increasing its fresh cut sales to convenience stores.
- Vegetable trays are considered a fresh cut item
- Kwik Trip is a convenience store
- Based on the limited information available, Del Monte had 27% greater revenue from Kwik Trip in 2018 than it did in 2017. (Lien Rinholen Decl. Ex. I, DM000373-75).
- Based on the limited information available, Del Monte had 40% greater revenue from fresh cut items in 2018 than it did in 2017. *Id.*

---

[3] Also available online at https://video.foxbusiness.com/v/1478922293001/#sp=show-clips.

- Del Monte had been working to expand the Kankakee facility where the vegetable trays were manufactured. (Lien Rinholen Decl. Ex. J, DM005095-96; Lien Rinholen Decl. Ex. K, DM006176-78).
- Del Monte's employees admit that its vegetable fresh cut operations are not as vertically integrated as its other lines, meaning it has less control over the source of the raw products. (Lien Rinholen Decl. Ex. L, FDA00019).

Based on these documents, the logical conclusion is that Kwik Trip sales were a driving factor in an expanding fresh-cut vegetable operation. What is unclear is whether Del Monte had the "strict control over hygiene" it claimed it did—and whether it could keep that strict control while doing more business in the gas station market. With an outbreak in 2018 and with the same product again in 2019,[4] it appears doubtful that Del Monte has been able to do so.

Plaintiff seeks to depose a Del Monte designee regarding the context of its relationship with Kwik Trip within its overarching plan to increase sales to convenience stores while ensuring food safety. Plaintiff seeks basic information about the change in Del Monte's sales of fresh cut products to convenience stores, including Kwik Trip, and what modifications, if any, were made to the supply chain to accommodate the increase.

### V. The Factual Basis for Del Monete's Claims Against Midwest Best Are Relevant and Discoverable.

Del Monte seeks to avoid answering questions about its selective implication of Midwest Best as the supplier responsible for the outbreak. In its Answer, Del Monte denies

---

[4] Del Monte Fresh vegetable trays were linked to an outbreak of *Salmonella* Infantis in Wisconsin and Minnesota. These were the same type of vegetable trays implicated in the 2018 *Cyclospora* outbreak and were also sold at Kwik Trip stores. (Lien Rinholen Decl. Ex. N, FDA Release).

the allegation that it determined that broccoli supplied by Midwest Best caused the outbreak[5]:

> 77.   Upon information and belief, Del Monte determined that the broccoli supplied by Midwest Best was the contaminated food item responsible for causing the *Cyclospora* outbreak.

Second Amended Complaint, Dkt. No. 37, (Apr. 4, 2019). Nonetheless, Del Monte brought claims against Midwest Best arising out of a "Continuing Food Guaranty" that guaranteed the food items it shipped were not adulterated and that Midwest Best would defend and indemnify Del Monte for any allegation that the products were defective. Answer to Second Amended Complaint and Crossclaims, Dkt. No. 44 at pp.16-18 (Apr. 25, 2019). Del Monte claims it incurred "expenses in defending the claims of Plaintiff *and other unnamed claimants*." *Id.* at p. 17, ¶ 5 (emphasis added).

Questions about the basis for Del Monte's claims against Midwest Best are appropriate for a designee deposition. *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.,* 218 F.R.D. 29, 33 (D. Conn. 2003)("As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information. . . it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition."); *U.S. E.E.O.C. v. Caesars Entm't, Inc.,* 237 F.R.D. 428, 434 (D. Nev. 2006)("areas of inquiry [that] seek the discovery of facts and

---

[5] Answer to Second Amended Complaint, Dkt. No. 44, Filed Apr. 25, 2019.

the source of information about the defendants' claims and defenses which are clearly relevant and [are] discoverable within the meaning of Rule 26(b).")[6]

Plaintiff is entitled to know why, if Del Monte denies it is responsible for Plaintiff's illness, it claims that the value of its crossclaim against Midwest Best exceeds $75,000.00. The documents available to Plaintiff suggest Del Monte's traceback was substantially limited by the nature of its supply chain for vegetables. (Lien Rinholen Decl. Ex. L, FDA00019). For example, the manager of the Kankakee facility that produced the trays could not trace the vegetables back more than one step; instead, that information would had to come from a procurement person in Florida. *Id.* Del Monte also failed to consider the possibility that the carrots were the vehicle for contamination, dismissing the notion out of hand since it was not addressed by regulators. (Lien Rinholen Decl. Ex. M, DM007956). Because fact-based contentions are appropriate for a designee deposition, Plaintiff should be permitted to inquire regarding Del Monte's factual basis for its position that Midwest Best-supplied produce was the source of the contamination.

---

[6] The case *Johnson v. Charps Welding & Fabricating, Inc.,* No. 14-CV-2081, 2017 WL 9516243 (D. Minn. Mar. 3, 2017), cited by Del Monte is inapposite. The court declined to require a second 30(b)(6) designee to provide the purely legal analysis to calculate ERISA attorney's fees and costs. *Id.* at *17. Though not mentioned by Del Monte, in *Johnson,* several other 30(b)(6) areas of inquiry related to parties' legal contentions were, in fact, permitted or not disputed. *Id.* at *12-17. The author of the *Johnson* opinion, Magistrate Judge Brisbois, had previously required a defendant to testify under 30(b)(6) regarding "factual information known at the time" the corporation made its claims. *See Arctic Cat, Inc. v. Bombardier Recreational Prod., Inc*., No. 12-CV-2692 (JRT/LIB), 2014 WL 12610146, at *7 (D. Minn. May 23, 2014).

## CONCLUSION

Defendant Del Monte seeks to establish exacting limits on what would normally be routine factual discovery in a product liability/negligence case while at the same time, continuing to deny the basic factual building blocks of Plaintiff's case. Placing Plaintiff in this obvious Catch-22 runs against the letter and spirit of liberal discovery practice and does so on the heels of a long and obviously improper delay in revealing the identity of a critical party. Whether the protective order was sought to further delay substantive discovery, obfuscate facts, gain some tactical advantage, or simply to complicate the process, Defendant's motion should be denied in its entirety. Further, Defendant should be ordered to designate witnesses; properly prepare them to testify on its behalf; and provide dates for deposition without delay.

Date: 8/7/2019                                          By: /s/Lindsay Lien Rinholen
                                                                                                       Ryan M. Osterholm (#0390152)
                                                                                                        Lindsay Lien Rinholen (#0397560)
PRITZKER HAGEMAN, P.A.
45 South Seventh Street
PwC Plaza, Suite 2950
Minneapolis, MN  55402
Telephone: (612) 338-0202
Facsimile: (612) 338-0104
ryan@pritzkerlaw.com
lindsay@pritzkerlaw.com

*ATTORNEYS FOR PLAINTIFF*